## W. L. MOODY & Co. v. B. W. ROWLAND.

Decided May 14, 1907.

**1.—Executed Contract—Breach of Implied Warranty—Measure of Damage.**

The general measure of damage for breach of an implied warranty in an executed contract of sale of personal property is the consideration paid by the purchaser with interest from the date of payment. The value of the thing purchased if it had been as represented, is not the proper measure of damage. In case of special damages growing out of such breach they must be specially pleaded. Pleading and evidence considered and held not sufficient to authorize a recovery for breach of an implied warranty.

**2.—Same—Pleading and Evidence.**

M. & Co. sold to R. a judgment against several defendants, at the time of the sale one of the solvent defendants, C., had been released from the judgment by M. & Co.; R. did not know of this; subsequently M. & Co., without the knowledge or consent of R. released the other solvent defendants. In a suit by R. against M. & Co. for damages for releasing the judgment debtors, pleading and evidence considered, and held not to authorize a recovery of damages for breach of the implied warranty that at the time of sale the judgment was subsisting against C.

**3.—Wrongful Cancellation of Judgment—Measure of Damage—Evidence.**

In a suit for damages for the wrongful cancellation of a judgment after its sale to plaintiff, the measure of damage is the amount due upon such judgment with interest from date of purchase, but it devolves upon plaintiff to show that the judgment could have been collected.

**4.—General Denial—Effect.**

In a suit for damages for the wrongful cancellation of a judgment, plaintiff having alleged that the judgment could have been collected and the defendants having answered by general denial, the defendants were not estopped, by reason of an implied warranty that the judgment was subsisting when sold by them to plaintiff, from showing that the wrong done by them to plaintiff was not that alleged in the petition, but one for which a different liability was incurred.

ON REHEARING.

**5.—Pleading—Issues—General Denial.**

In a suit for breach of implied warranty, pleadings considered, and held to present only the issues whether the defendants agreed to transfer the judgment in question to plaintiff and subsequently released the same without plaintiff's consent, and what was the value of said judgment at the time it was released.

**6.—Failure of Consideration—Pleading.**

In the absence of pleading, proof of the failure or inadequacy of the consideration for a contract is not admissible. Nor is such evidence admissible when the issue is whether or not the contract was made.

**7.—Issue—Immaterial Evidence.**

The issue being whether or not a certain contract was made, evidence that in a different transaction plaintiff exhibited to defendant's agent a forged abstract of title to land, which land formed part of the consideration for the contract, was immaterial, especially in the absence of evidence that plaintiff knew the abstract to be forged.

**8.—Impeaching Witness—Collateral Matter.**

A witness in a civil suit can not be discredited or impeached by requiring him to testify to discreditable acts on his part having no material bearing upon the issues involved in the case.

Appeal from the District Court of Galveston County. Tried below before Hon. Frank M. Spencer.

*T. N. Jones, John M. Duncan, James B. & C. J. Stubbs* and *Terry, Cavin & Mills,* for appellants.—"It is well established that if the evidence offered conduces in any reasonable degree, to establish the probability or improbability of the fact in controversy, it should go to the jury."—Home Insurance Co. v. Weide, 11 Wallace, 440.

On an issue as to whether or not a contract was made as claimed,

any circumstances bearing thereon, or any evidence which tends to render that fact probable or improbable, is relevant. 3 Enc. of Evidence, 517; Klopp v. Jill, 4 Kas., 482; Richardson v. McGoldrick, 43 Mich., 476; Tufts v. Chester, 62 Vt., 353; 19 Atl. Rep., 988; Mudgett v. Emerson, 67 N. H., 234; 30 Atl. Rep., 343; Randall v. Preston, 52 Vt., 198; Shrimpton v. Netzorg, 104 Mich., 225; 62 N. W. Rep., 343; Glessner v. Patterson, 164 Pa. St., 224; 30 Atl. Rep., 355; 16 Cyc., 1118-1119, and cases cited.

The assignee of a judgment takes it subject to all the equities existing between the original parties, whether he had notice of the same or not. Where a judgment once paid or otherwise discharged, but not satisfied of record, is assigned by the judgment creditor, the assignee takes it subject to all defenses and equities which the judgment debtor had against the assignor. The assignee is bound to inquire and takes the judgment as if it were past due paper. Wintz v. Gordon, 2 Posey, U. C., 214; Ellis v. Kerr, 11 Texas Civ. App., 349; Dutton v. Mason, 21 Texas Civ. App., 392; Freeman on Judgments, 3d ed., sec. 427, and cases cited; 2 Black on Judgments, sec. 953, and cases cited; 17 Am. & Eng. Enc. of Law, 2d ed., p. 884, and cases cited; Wright v. Levy, 12 Cal., 257.

The assignor of a judgment impliedly warrants to the assignee that it is a valid and subsisting obligation in favor of the assignor against his judgment debtor. If it is not such a valid and subsisting obligation, then the warranty is broken as soon as it is made, and the measure of the assignee's damages is the consideration he paid the assignor for the judgment. 4 Cyc., pp. 82 and 83, and cases cited.

"As a general rule, the assignor of a claim impliedly warrants that it is valid, and that the debtor or obligor is liable to pay it, and if, in fact, the claim is invalid the assignor is liable to the assignee for the amount paid for the assignment." 2 Enc. of Law, p. 1090, and cases cited.

The measure of damages is the value of the consideration paid, with legal interest from the date of payment. Mathews v. Allen, 6 Texas, 330; Scranton v. Tilley, 16 Texas, 183; Anderson v. Duffield, 8 Texas, 237; Anding v. Perkins, 29 Texas, 348.

*Kleberg, Davidson & Neethe, Lewis Fisher,* and *Johnson & Edwards,* for appellee.—A parol sale of a judgment is valid, and title to it passes to the assignee without a formal assignment. Garvin v. Hall, 83 Texas, 295; Putnam v. Capps, 6 Texas Civ. App., 612; 2 Black on Judgments, sec. 945, et seq.

When a judgment is paid by a stranger with intent that it be kept alive for his benefit he is entitled to enforce it against the debtor, and no formal transfer of the judgment is necessary; an agreement to assign it is equivalent to an assignment. 2 Black on Judgments, sec. 999; Harbeck v. Vanderbilt, 20 N. Y., 395; Crumlish v. Central Imp. Co., 38 W. Va., 390; Ithica v. Eggleston, 51 Hun., 638; Ensworth's Appeal, 52 Pa. (2 P. F. Smith), 465; Rollins v. Thompson, 21 Miss., 522; Null v. Moore, 32 N. C., 324; Marshall v. Moore, 36 Ill., 321; Sydam v. Cannon, 1 Houst. (Del.), 431;

Hall v. Taylor, 18 W. Va., 544; People v. Weimer, 94 Ill. Apps., 112.

A party who, for value, having assigned a judgment, afterward satisfies or annuls it incurs liability therefor to his assignee. If the satisfaction be by payment the assignee may recover the money so paid; if it be without payment the assignee may recover the damages sustained. Freeman on Judgments (2d ed.), sec. 426 A; Booth v. Farmers, etc., Bank, 50 N. Y., 399; Smith v. Brownell, 39 Barb. (N. Y.), 370; Hudson v. Morriss, 55 Texas, 603.

The measure of damages in a suit by the assignee against the assignor of the judgment for having released a defendant is the difference between the value of the judgment with the release and its value without the release. 3 Joyce on Damages, sec. 2212; Bennett v. Buchan, 61 N. Y., 222; Revinus v. Langford, 75 Fed. Rep., 959; Jansen v. Ball, 6 Cowen (N. Y.), 628.

The sale of the judgment to appellee, especially in connection with Lawson's accompanying conduct and statements, amounted to a representation and warranty that the judgment was valid and subsisting against all the debtors. 2 Black on Judgments, sec. 949; Tanner v. Nichols, 80 S. W. Rep., 225.

"The estoppel created by a false representation, acted upon, is commensurate with the thing represented, and operates to put the party entitled to the benefit of the estoppel in the same position as if the thing represented were true;" and appellants can not avoid or affect appellee's action by proving their own wrong and deception of him at the time they sold him the judgment. Baylor County v. Craig, 69 Texas, 330, 333; Munson v. Hallowell, 26 Texas, 475, 485; Love v. Barber, 17 Texas, 312, 318; Stewart v. Crosby, 26 S. W. Rep., 651; Fielding v. DuBose, 63 Texas, 631; San Antonio B. & L. Assn. v. Stewart, 94 Texas, 441; Risien v. Brown, 73 Texas, 135, 142; Patterson v. True, 2 S. W. Rep., 860; Tanner v. Nichols, 80 S. W. Rep., 225; Schwarz v. National Bank, 67 Texas, 217, 218; Westbrook v. Guderian, 3 Texas Civ. App., 412; 2 Rice on Evidence, p. 710, et seq.; 2 Pomeroy's Eq. Jur., sec. 804; Grissler v. Powers, 81 N. Y., 57; Given v. Times-Republican Printing Co., 114 Fed. Rep., 92, 95; Muldoon v. Seattle Ry. Co., 38 Pac. Rep., 995.

Even if appellants could avoid or in any manner affect this suit by proving that before selling this judgment to appellee they had secretly agreed to release Clark, they will not be permitted to do so without pleading such previous agreement; and they did not plead it. Willis v. Hudson, 63 Texas, 678; Glasscock v. Hamilton, 62 Texas, 143; Scarbrough v. Alcorn, 74 Texas, 358; Lewis v. Hatton, 86 Texas, 533, 535; Mullen v. Mutual Life Ins. Co., 89 Texas, 259, 262.

Even if appellee's cause of action could be switched to a suit for breach of covenant of warranty of title to the judgment, still, the measure of his damages would be, and he would be permitted to recover, the difference between the value of the judgment with the releases and its value without the releases. 3 Joyce on Damages, sec. 2212; Sedgwick on Measure of Damages (5th ed.), 319, 322; Bennett v. Buchan, 61 N. Y., 222; Revinus v. Langford, 75 Fed. Rep., 959;

Jansen v. Ball, 6 Cowen (N. Y.), 628; Furniss v. Ferguson, 15 N. Y., 437; Voorhees v. Earl, 2 Hill (N. Y.), 288; Cary v. Gruman, 4 Hill (N. Y.), 625; Woodward v. Thatcher, 21 Vt., 580; Marshall v. Wood, 16 Ala., 806; Thornton v. Thompson, 4 Grattan (Va.), 121; Slaughter v. McRae, 3 La. Ann., 455.

However appellee's cause of action may be treated, whether as a suit for damages occasioned by appellants impairing and destroying the value of the judgment by releasing the debtors after having assigned the judgment to appellee, or as a suit for breach of contract to execute a written transfer of the judgment, the statute of limitations did not begin to run until appellants repudiated the agreement, which they did by executing the releases and not before, and not until appellee learned of this act of repudiation. Henrietta Bank v. Barrett, 25 S. W. Rep., 456; Munson v. Hallowell, 26 Texas, 475, 485; Taylor v. Rowland, 26 Texas, 293; Leach v. Wilson Co., 68 Texas, 353, 355-356; Yeary v. Cummins, 28 Texas, 91, 96-97.

PLEASANTS, Associate Justice.—Appellee brought this suit against appellants, a firm composed of W. L. Moody, W. L. Moody, Jr., and F. B. Moody, to recover damages for the alleged wrongful and fraudulent act of appellants in releasing a judgment for $23,490.26 obtained by them on January 25, 1899, in the District Court of Galveston County, against H. H. Rowland, A. L. Clarke, J. D. Moody and J. H. LeGrand, and which they had for a valuable consideration sold to appellee prior to the date of said release.

Plaintiff's petition contains the following allegations: "That on or about the 24th day of February, 1900, while the said judgment was still in force, unpaid and unsatisfied, this plaintiff for a valuable consideration purchased the said judgment from the defendant, W. L. Moody & Co., and the said defendant sold said judgment to this plaintiff and agreed and contracted with the plaintiff to transfer the same to plaintiff. The consideration paid by the plaintiff to the defendant for the purchase of said judgment and the contract and agreement whereby plaintiff purchased said judgment was as follows: The plaintiff agreed and contracted to convey to the defendant certain lands situated in Presidio County, Texas, constituting about one hundred and five thousand acres located by virtue of certificates issued to the Texas & St. Louis Railway Company, and in order to place the title to said lands in said W. L. Moody & Co., and to divest the same out of the plaintiff, it was agreed by and between the plaintiff and the defendant that in a certain suit then pending in the District Court of Presidio County, Texas, wherein said W. L. Moody & Co. were plaintiffs, and the said B. W. Rowland and others were defendants, in which suit the said W. L. Moody & Co. sought to recover of this plaintiff, and the other defendants therein, the said lands, a judgment by default against this plaintiff and said other defendants should be rendered in said suit in favor of the said W. L. Moody & Co., for the recovery of said lands; that a certain contract entered into between said W. L. Moody & Co., and H. H. Rowland with reference to certain lands situated in the counties of Crockett, Brewster and Jeff Davis in the State of Texas, should be cancelled

by said H. H. Rowland; that said Moody was to pay B. W. Rowland, the plaintiff, the sum of twenty-five hundred dollars ($2,500) and was to pay and settle a certain claim against said B. W. Rowland, plaintiff, held by one Brown to Duncan & Jones, attorneys for said Brown, and said W. L. Moody & Co. was to assign or turn over to the plaintiff, B. W. Rowland, certain collateral claims held by said Moody & Co.; that the plaintiff was to turn over and surrender to the defendants, W. L. Moody & Co., certain vendor's lien notes given by one Willson to the plaintiff, and the certificates to the lands in Presidio, Brewster, Crockett and Jeff Davis Counties, Texas, and the defendants, W. L. Moody & Co., on their part were to assign to the plaintiff, B. W. Rowland, the aforesaid judgment of W. L. Moody & Co., against H. H. Rowland, A. L. Clarke, J. D. Moody and J. H. LeGrand, and the said defendants, W. L. Moody & Co., did contract and agree with the plaintiff, for the consideration above set forth and as part of said agreement, to transfer and assign to plaintiff the said judgment above referred to of W. L. Moody & Co., against H. H. Rowland, A. L. Clarke, J. D. Moody and J. H. LeGrand."

It is further alleged, in substance, that plaintiff complied fully with the terms of his said contract and agreement and that defendants had also complied with all of their said contract undertakings save and except their agreement to transfer and assign said judgment to plaintiff, which agreement they failed and refused to perform; that by reason of the premises plaintiff became the owner of said judgment and entitled to all the rights, remedies and processes thereto belonging; that after the performance by plaintiff of his part of said agreement the defendants repeatedly promised to execute and deliver to him an assignment of said judgment, but failed to do so, and on the 3d day of October, 1902, without the knowledge or consent of plaintiff and in fraud of his rights they wrongfully and fraudulently and for a valuable consideration released the said A. L. Clarke, J. D. Moody and J. H. LeGrand from all liability on said judgment; that the said parties obtained said release without notice of plaintiff's rights in said judgment, and plaintiff has thereby lost his right to enforce said judgment against them; that at the time plaintiff purchased said judgment and at the time said releases were executed the judgment was in full force unpaid and unsatisfied, and could and would have been collected by plaintiff from said Clarke, Moody and LeGrand but for the wrongful and fraudulent act of defendants in executing said release; that said Clarke, Moody and LeGrand were and are possessed of property out of which the amount of the judgment could have been made, but that H. H. Rowland was at the time said judgment was purchased by plaintiff, and has been continuously since that time, wholly insolvent and no part of said judgment can be collected from him; that plaintiff has realized nothing on said judgment and it is now worthless by reason of the said wrongful and fraudulent act of the defendants.

It is further alleged that the interest of plaintiff in the lands conveyed by him to defendants as aforesaid exceeded in value the

amount of said judgment and was "so accepted by defendants."
It is then alleged that by reason of the premises aforesaid and of
the said wrongful and fraudulent acts of defendants, the plaintiff
has been damaged in the sum of $40,000 and judgment for that
amount is asked against defendants.

Defendants answered by general and special exceptions and gen-
eral denial, plea of limitation of two years, and special plea under
oath denying "that they ever contracted, either verbally or in writing,
to convey, transfer or sell to B. W. Rowland the judgment aforesaid
against H. H. Rowland, Clarke, J. D. Moody and LeGrand, or that
B. W. Rowland ever paid them, or anyone for them, any considera-
tion for said judgment, or that B. W. Rowland ever had or held
any right, title or interest in said judgment; and also denied,
under oath, that they ever agreed or contracted to transfer said
judgment to B. W. Rowland at any time, or that they ever at any
time authorized any one for them to make any such contract, or
that they, or any one representing them, ever made any represen-
tations at any time that they would transfer or assign said judg-
ment to said B. W. Rowland, or sell it to him, or that they ever
held out to him or led him to believe that they intended to do so;
and alleged under oath that if B. W. Rowland had any written
contract or agreement purporting to be signed by them, or by any
one claiming to be their agent or attorney, agreeing to transfer and
convey to him the said judgment, that the same was made without
their knowledge or consent, and without any authority, either verbal
or written, to execute the same.

The trial of the cause in the court below, by a jury, resulted in a
verdict and judgment in favor of plaintiff in the sum of $25,466.12,
and defendants have appealed.

The evidence shows that on January 25, 1899, the defendants re-
covered a judgment in the District Court of Galveston County
against H. H. Rowland, A. L. Clarke, J. D. Moody and J. H.
LeGrand for the sum of $23,490.25, with foreclosure of attachment
liens upon several tracts of land in Crockett, Brewster and Jeff
Davis Counties, and also 105,000 acres in Presidio County, all of
which lands had been attached as the property of H. H. Rowland.
Orders of sale were issued on this judgment and at the sales there-
under Moody & Co. became the purchasers of all of the lands. In
March, 1899, after the purchase by Moody & Co. of the Crockett,
Brewster and Jeff Davis County lands, they entered into a contract
with H. H. Rowland to reconvey said lands to him upon his pay-
ment to them within a specified time of a sum named in said con-
tract. After the purchase of the Presidio lands under said order
of sale, defendants brought suit therefor against H. H. Rowland, W.
P. Rowland and the plaintiff herein, B. W. Rowland. The petition
in that suit alleged that the lands in controversy therein were the
property of H. H. Rowland when levied upon under the writ of
attachment and that H. H. Rowland had placed the title thereto
in B. W. Rowland for the purpose of defrauding his creditors.

This suit was pending in the District Court of Presidio County
on the 24th day of February, 1900. Such being the relation of the

parties to each other an agreement was entered into, on the date last mentioned, between H. H. and B. W. Rowland on the one side, and Moody & Co., acting by their duly authorized agent, T. F. Lawson, on the other, by the terms of which B. W. Rowland was to convey to Moody & Co. the Presidio County lands and judgment by default was to be taken by Moody & Co. in the suit then pending in Presidio County for the recovery of said lands, the contract by which Moody & Co. were obligated to reconvey the Brewster, Crockett and Jeff Davis County lands was to be cancelled, the certificates under which the lands were located and the maps showing said locations were to be turned over to Moody & Co., and certain vendors' lien notes executed by one Willson in favor of B. W. Rowland for a portion of the Presidio County lands were also to be delivered to them. In consideration of these agreements Moody & Co. agreed to pay B. W. Rowland $2,500 and to pay a claim against him held by one Brown for $750, and also to pay all taxes due upon the Presidio County lands and to turn over to B. W. Rowland the collateral held by them as security for the debt for which the judgment in their favor against H. H. Rowland et al., has been obtained.

There is no conflict in the evidence as to the above terms of said agreement and all of them were fully complied with by the parties.

Plaintiff claims that as an additional consideration for his agreements above set out the defendants agreed that he should become the owner of the judgment in the District Court of Galveston County held by them against H. H. Rowland, A. L. Clarke, J. D. Moody and J. H. LeGrand, and that they would transfer and assign said judgment to him. The evidence upon this issue is conflicting, but no question is made by the appellants as to its sufficiency to sustain the finding of the jury that Lawson, who was the duly authorized agent of defendants, did agree to transfer said judgment to plaintiff as alleged, nor is such finding attacked on the ground that it is against the preponderance of the evidence. The defendants are not shown to have had any actual knowledge of this fact, having never been so informed either by their agent, Lawson, or the plaintiff prior to the execution of the releases mentioned in the petition.

This judgment could have been collected from A. L. Clarke at the time it was sold to plaintiff, or at any time prior to his release therefrom. H. H. Rowland was insolvent when the judgment was sold to plaintiff and has since been adjudged a bankrupt. Appellee offered no evidence tending to show that the judgment could have been collected from either of the other defendants therein.

Lawson testified that he regarded all of the defendants in said judgment as insolvent and the judgment as worthless, but he further testified that the judgment had been recorded in Harris and other counties and that thereby a lien had been created upon lands held or claimed by J. D. Moody in said counties. There is no evidence showing the quantity of land, if any, owned by said Moody or its value.

It was shown that Lawson had agreed in April, 1899, to release Clarke from further liability upon said judgment in consideration of services rendered by him in assisting in procuring a settlement with

the Rowlands of the matters in controversy between them and the defendants in regard to the Brewster, Crockett and Jeff Davis County lands, and to be rendered in effecting a settlement of the suit for the lands in Presidio County. Clarke assisted in bringing about this latter settlement and was released from the judgment at the time it was agreed to be transferred to plaintiff, but this fact was not known to plaintiff. There is no evidence showing the value of the consideration given by plaintiff for the judgment. It was not shown what interest he claimed in the Presidio County lands and there is no testimony tending to establish the value of said lands or of his interest therein.

In October, 1902, the defendants for a valuable consideration executed and delivered to Clarke, J. D. Moody and LeGrand written releases of said judgment. None of said judgment defendants knew at the time they procured said releases that plaintiff had any interest in said judgment. This suit was filed on the 25th day of May, 1903.

Among other grounds of error assigned by appellants it is contended that the charge did not give the jury the correct rule for measuring the damages, if any, to which plaintiff was entitled under the evidence, and that the court erred in not giving the jury the following special charge requested by the defendants: "You are instructed that by the undisputed testimony in this case, A. L. Clarke was released from any liability under or on account of the Galveston County judgment, in favor of W. L. Moody & Co., against said A. L. Clarke and others, in 1899, and thereafter, no part of said judgment could have been collected from said A. L. Clarke, either by W. L. Moody & Co., or any other person holding or owning said judgment. And you are instructed that, under the evidence presented in this case, even if you find in favor of the plaintiff, then in determining the amount to which the plaintiff would be entitled, you will not take into consideration at all the question of whether or not A. L. Clarke was solvent or insolvent, or whether or not he had or has property out of which the judgment in said Galveston County case could have been made, had he not been released from liability upon said judgment, and you will only take into consideration in arriving at the amount of your verdict, the question of how much could have been collected upon said judgment from H. H. Rowland, J. D. Moody or J. H. LeGrand, or from all of them, and if you believe from the evidence that said J. D. Moody, H. H. Rowland and J. H. LeGrand were insolvent on the 24th day of February, 1900, and have been insolvent ever since that time, then you are instructed, in such event, to find your verdict in favor of the defendants, W. L. Moody & Co."

The judgment is also assailed on the ground that the verdict is not supported by the evidence, in that the uncontradicted evidence shows that Clarke was released from the judgment before it was sold to plaintiff and there is no evidence showing that the other defendants in said judgment were solvent at the time the judgment was sold to plaintiff or at any time after said date.

The trial court instructed the jury that in event they found for plaintiff and believed from the evidence that the judgment sold

him by the defendants could have been collected from either Clarke, Moody or LeGrand, or from all of them, at the time it was sold, or at any time prior to the execution of the releases of October, 1902, the measure of plaintiff's damage would be the amount due upon said judgment on February 24, 1900, the date of the sale, with interest thereon from said date.

The undisputed evidence showing that Clarke had been released from all liability on the judgment prior to its sale, the only cause of action growing out of his release in favor of plaintiff was one for damages for breach of the implied warranty that at the time of its sale said judgment was unsatisfied and subsisting against all of the defendants therein.

The general measure of damages for breach of an implied warranty in an executed contract of sale of personal property is the consideration paid by the purchaser with interest from the date of such payment, and the value of the thing purchased if it had been as represented can not be recovered. Of course there might be special damages growing out of the breach of the warranty which were in contemplation of the parties at the time the sale was made and could therefore be recovered under proper allegations, but the right to recover special damages does not arise upon the pleading or the evidence in this case.

If under the allegations of his petition plaintiff was entitled to recover for defendants' wrong in selling him a judgment as subsisting and enforceable against Clarke when in fact the latter had been released from all liability thereon, it seems to be settled, at least in this State, that for such wrong he could only recover the amount paid by him for the judgment with legal interest from the date of such payment. Matthews v. Allen, 6 Texas, 330; Anderson v. Duffield, 8 Texas, 237; Scranton v. Tilley, 16 Texas, 183; Merrill v. Taylor, 72 Texas, 293; George v. Hesse, 16 Texas Ct. Rep., 359.

In the case of George v. Hesse, *supra,* the plaintiff sued to recover damages for the false and fraudulent representations of the defendant that a tract of land sold by him to plaintiff had on it a flowing or gushing well. The trial court instructed the jury that the measure of plaintiff's damages was the difference between the value of the land with and without the gusher. The Supreme Court say that this was not the proper measure of damages, and that plaintiff was only entitled to recover the difference between the value of the land without the gusher and the consideration paid by him for said land. It is true the cause of action asserted in that case was based upon the falsity of an express representation made as an inducement for the purchase of land by the plaintiff from the defendant, but we see no reason for not applying the same rule when the cause of action is based on the falsity of an implied representation or warranty, and the cases cited by the court in support of its decision show that the rule applies in sales of personal as well as real property. In all suits of this character the plaintiff, in the absence of facts showing special damage, is only entitled to compensation for his loss and can not recover what he might have gained had the representation been true. While it is

well settled that failure to comply with a contract of sale will entitle the injured party to recover as damages the difference between the contract price and the market value of the property at the date of the breach, the rule does not apply when the contract is executed and the title to the property fails or there is a breach of an express or implied warranty as to the character or condition of the property, in which case there can be no recovery for loss of bargain and the general damages recoverable must be measured solely by the consideration paid by the purchaser. There may be no sound reason for the difference in the rule in the two cases, but the distinction is clearly recognized by our Supreme Court in the case last mentioned.

Applying the rule announced in George v. Hesse to the instant case, if plaintiff's suit could be considered one for damages for breach of the implied warranty that the judgment sold him by the defendants was subsisting and enforceable against Clarke as well as the other defendants therein, he would only be entitled to recover for such breach the difference between what he paid for the judgment and its value, if any, as a judgment against the other defendants. Such recovery, however, is not authorized either by the pleading or the evidence. The cause of action asserted by plaintiff is accurately and concisely stated by appellee in his brief as follows:

"The gravamen of appellee's complaint is that Moody & Co., released the solvent defendants and destroyed the value of the judgment after having sold it to him. The petition alleged the sale of the judgment by Moody & Co. to appellee; it described the judgment, its amount, date, interest, credits, etc.; it alleged that by the contract in question Moody & Co. sold and agreed to assign the judgment to appellee, when and after which the judgment properly belonged to him and was his property; that thereafter Moody & Co., without appellee's knowledge or consent, executed and delivered releases from the judgment to Clarke, Moody and LeGrand; that these defendants in judgment were solvent at the time of such releases, and the judgment could and would have been collected by appellee out of property belonging to them, but for the releases; that the remaining defendant, H. H. Rowland, was insolvent, and, by reason of the releases, the value of the judgment had been destroyed and it was worthless; that the released defendants in judgment obtained and took their releases without notice of the rights of appellee as assignee of the judgment. And appellee seeks to recover damages of appellants for thus destroying the value of the judgment which belonged to him."

We think it clear that the petition did not authorize the recovery of damages for breach of the implied warranty that the judgment was, at the time it was sold to plaintiff, subsisting and enforceable against Clarke. If there had been allegations authorizing such recovery there was no attempt made by plaintiff to show the value of the consideration given by him for the judgment and therefore there was no evidence from which the damages recoverable by him could have been ascertained.

The suit not being for breach of warranty or for false repre-

sentation as to the condition of the judgment at the time it was sold, the question of the proper measure of damages in a suit of that kind is only material for the purpose of showing that the rule of damages in such case is different from that which governs in a suit for the destruction or injury of the judgment by the release of the defendants therein after it was sold to the plaintiff. The two causes of action are separate and distinct from each other and the same measure of damages does not apply in both cases.

The measure of damages submitted to the jury by the court was the correct measure for the case made by the pleading, but the evidence failed to establish the case pleaded. To entitle plaintiff to recover the value of the judgment he was required to prove, as alleged in the petition, that the judgment could have been collected at the time he purchased it or at some time subsequent thereto, and prior to the execution of the releases which were, as alleged in the petition, executed and delivered by the defendants herein to Clarke, Moody and LeGrand in October, 1902. He proved the solvency of Clarke at the time and subsequent to the sale of the judgment, but the undisputed evidence shows that Clarke was released from the judgment prior to its sale to plaintiff, and there is no evidence that it could have been collected from the other defendants therein at any time after its purchase by plaintiff. The effect of the failure of the evidence to establish the cause of action alleged in the petition can not be avoided on the theory that the measure of damages for the wrong done plaintiff by defendants in selling him a judgment which they impliedly warranted was subsisting and enforceable against Clarke when in fact Clarke had been released therefrom prior to its sale, is the same as the measure applicable to the case alleged and therefore it is immaterial that the case made by the evidence is not identical with that alleged in the petition. As we have before stated, the measure of damages in the two cases is not the same, but if it was, such fact would not relieve plaintiff of the burden of proving the case alleged.

Appellee urges that appellants having sold him the judgment without informing him that Clarke had been released and thereby impliedly represented that it was a subsisting and enforceable judgment against all of the defendants therein, are estopped from showing that their implied representation was not true. Plaintiff alleged that the judgment could have been collected at the time and subsequent to its purchase by him. This was an essential part of his cause of action which it was necessary for him to prove. The general denial of the defendants put in issue all of the facts necessary to sustain the cause of action alleged and under it defendants were entitled to show that the facts alleged were not true, and we do not think the doctrine of estoppel can be invoked to prevent them from showing that the wrong done by them to the plaintiff was not that alleged in the petition, but one for which a different liability was incurred.

We think the requested instruction before set out should have been given, and that the assignment of error attacking the verdict on the ground that it is not supported by the evidence, should be sustained.

We deem it unnecessary to discuss the remaining assignments because, if error is shown by any of them it is not such as is likely to occur upon another trial.

For the reasons above given the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

The Supreme Court having held, in answer to a certified question, that we erred in reversing the judgment of the court below upon the grounds stated in our former opinion, the motion for rehearing filed by appellee is granted.

It is unnecessary in determining the questions raised by the assignments of error which were not discussed in our former opinion to restate the case. We refer to that opinion and to the certificate which is copied in the opinion of the Supreme Court (Moody v. Rowland, 100 Texas, 363), for a statement of our conclusions of fact.

Under the law as announced in the opinion of the Supreme Court the only issue raised by the pleadings was whether the appellants through their agent Lawson agreed, as a part of the consideration for the contract of February 24, 1900, to transfer the judgment in the District Court of Galveston County to appellee, and subsequently released the defendants in said judgment without appellee's consent, and what was the value of said judgment at the time it was released by appellants, as alleged in plaintiff's petition.

The first assignment of error presented in appellants' brief is as follows:

"The court erred in refusing to permit defendants to prove by the witness B. W. Rowland, and in excluding and refusing to admit in evidence the testimony of the witness B. W. Rowland, offered by the defendants upon the trial of this case, in substance as follows:

"That the facts and circumstances giving rise to the negotiations of February 24, 1900, between the plaintiff and Thos. F. Lawson, were, that there was a suit pending in trespass to try title in the District Court of Smith County, Texas, wherein Miss Driskell, as creditor of H. H. Rowland, had levied upon and sold certain property in the city of Tyler, standing on the records in the name of B. W. Rowland, but levied upon by Miss Driskell as the property of H. H. Rowland, said property having been bought in by Miss Driskell, the judgment creditor, and she having instituted the suit against B. W. Rowland in trespass to try title to determine whether said property was really the property of B. W. Rowland or of his brother, H. H. Rowland, and that said cause was pending and upon trial in the District Court of Smith County, Texas, at Tyler, and in that case, upon the issue as to whether said property was the property of B. W. Rowland or H. H. Rowland, the point had been reached in the case where B. W. Rowland, as defendant in the Driskell suit, agreed to abandon his claim after he and his brother, H. H. Rowland, had testified as witnesses in that case, no other witnesses having testified therein for either side, and that said B. W. Rowland agreed

that Miss Driskell should take judgment for the property in issue in that suit without further trial, and that the property in issue in that suit, standing in the name of B. W. Rowland, had come into his name through a trade by his brother, H. H. Rowland, of a part of the Paramore lands to the I. & G. N. R. R. Co. (it being otherwise in evidence in this case that the 105,000 acres of land in Presidio County and other land were deeded by Paramore to said B. W. Rowland), and that said B. W. Rowland then understood that the same issues, or practically the same issues, were involved in that Driskell case that were involved in the suit then pending in Presidio County, Texas, against him and others, in trespass to try title by W. L. Moody & Co., as plaintiffs, to recover the 105,000 acres of Presidio County lands described in the quit claim deed from B. W. Rowland to W. L. Moody & Co., executed by B. W. Rowland on February 24, 1900, and introduced in evidence by the plaintiff in this suit, and that the identity of said issues in said Driskell case and said Presidio County suit, was upon the theory that the said 105,000 acres of Presidio County land belonged in fact to H. H. Rowland, the brother of B. W. Rowland, and not to B. W. Rowland, although the title to said land stood on the record in B. W. Rowland's name, and that B. W. Rowland understood at and prior to the trial of said issues in said Driskell case in Smith County that it was claimed by W. L. Moody & Co. and by Miss Driskell that the property sued for by Miss Driskell in Smith County, and the 105,000 acres of land sued for by W. L. Moody & Co. in Presidio County, were the property of H. H. Rowland, and that the negotiations for a settlement between B. W. Rowland, H. H. Rowland and W. L. Moody & Co., which culminated on February 24, 1900, arose and began immediately after and were brought about by the disposition aforesaid of said Driskell case, and B. W. Rowland's abandonment in that case of his claim to the land sued for by Miss Driskell; all of which testimony so offered by the defendants, and the action of the court excluding and refusing to admit the same will more fully appear in defendants' bill of exceptions No. 1."

The trial court did not err in excluding this testimony. Other testimony in the case disclosed the fact that the suit of Driskell v. Rowland had just been determined in the District Court of Smith County when the negotiations which resulted in the contract of February 24, 1900, between appellants and appellee began, and showed the nature of that suit, the issues involved therein, and the result of its trial. We do not think the rejected testimony was material to any issue in the case, but if material its exclusion was harmless because the facts sought to be established thereby were shown by other testimony admitted on the trial and which was undisputed.

The second, third, fourth, fifth and sixth assignments of error complain of the refusal of the trial court to permit appellants to prove by the appellee Rowland and other witnesses facts tending to show that appellee did not have any title to the Presidio County land, and that the apparent title to said land had been placed in appellee for the purpose of defrauding the creditors of his brother,

H. H. Rowland.  Appellants did not plead a failure or inadequacy of the consideration for the contract for the sale of the judgment, and the testimony, the exclusion of which is complained of by these assignments, was not material to any issue in the case.  It may be conceded that appellee had no title to the Presidio County lands, the conveyance of which by him to appellants was one of the considerations for the sale of the judgment, yet the fact remains that the apparent title to said lands was in him and he was claiming same in the suit brought against him by appellants for their recovery, and his agreement to abandon his claim and allow judgment in said suit to be taken against him by default would be a sufficient consideration to support the contract for the sale of the judgment, and the facts that he did not own said lands and that appellants knew that he had no title thereto bears too remotely upon the issue of whether appellants made the contract for the sale of the judgment, to make proof of same material.

The seventh assignment of error is as follows:

"The court erred in refusing to permit the defendants to prove by the witness B. W. Rowland, upon the trial of this cause, and in excluding and refusing to admit in evidence the testimony of said B. W. Rowland offered by said defendants, in substance as follows:

"That at the time of the making of the contract dated April 29, 1899, and introduced in evidence in this case, said B. W. Rowland exhibited and presented to Thos. F. Lawson, as the agent of W. L. Moody & Co., a fraudulent and forged abstract purporting to show the title to 30,000 acres of land in Jeff Davis County (said 30,000 acres being in part the subject of said contract), to be in said B. W. Rowland, which said testimony so offered by defendants and the action of the court in excluding and refusing to admit the same is more fully set forth in defendants' bill of exceptions No. 2."

This assignment is without merit.  The fact that appellee, in a different transaction from that out of which the controversy in this case arose, exhibited to appellant's agent a fraudulent or forged abstract of title to land could not be material to any issue in this case.  If admissible as impeaching testimony it would have had no probative force unless it was further shown that appellee knew the abstract was forged at the time he exhibited it to Lawson.  No offer to show this fact was made by appellants and for that reason alone the court did not err in excluding the testimony.

In addition to this it seems to be settled in this State that a witness in a civil case can not be discredited or impeached by requiring him to testify to discreditable acts on his part having no material bearing upon the issues involved in the case.  Gulf, C. & S. F. Ry. Co. v. Johnson, 83 Texas, 633; Boon v. Weathered, 23 Texas, 675; Dillingham v. Ellis, 86 Texas, 447.

The eighth assignment of error is also without merit.  The excluded testimony would only have tended to impeach the witness by contradicting him upon a matter not material to any issue in the case, and was therefore inadmissible.

The questions raised by the ninth, tenth, eleventh, twelfth and twentieth assignments were involved in the question certified by us

to the Supreme Court and under the opinion of that Court before cited said assignments must be overruled.

The thirteenth, fourteenth and fifteenth assignments complain of the refusal of the trial court to give the jury special instructions requested by the appellants submitting the issue of limitation of two years as a bar to plaintiff's suit. We do not think the issue was raised by the evidence and the requested charges were therefore properly refused. The suit was to recover damages for the release of the judgment by appellants after it had been sold by them to appellee. The record shows that the releases were executed in October, 1902, and this suit was filed in May, 1903.

The court did not err in refusing to give the special charges set out in the sixteenth and seventeenth assignments. The unsigned memorandum written by appellants' agent, Lawson, and purporting to be the substance of the agreement of February 24, 1900, was not offered in evidence as a contract for the sale of the Galveston County judgment and the jury could not have so regarded it, and therefore it was unnecessary to instruct them that said memorandum was not a written contract. These charges were also objectionable because they gave undue emphasis to appellants' contention that said writing was not a memorandum of the terms of the agreement, but merely of the proposition submitted to Lawson by appellee, and to that extent were upon the weight of the evidence.

There was no evidence in the case raising the issue of any other agreement to transfer the judgment than the agreement of February 24, 1900, and there was no error in refusing the requested instruction to the effect that appellee could not recover if the jury believed that the judgment was not transferred by the agreement of February 24, 1900, notwithstanding they might find that Lawson, subsequent to said agreement of February 24, 1900, promised appellee that he would transfer the judgment to him.

We think the charge of the court correctly and sufficiently instructed the jury upon the burden of proof, and the assignments complaining of the charge in this regard and of the refusal to give special instructions on this issue can not be sustained.

This disposes of all the assignments except those raising the questions passed upon in the opinion of the Supreme Court before cited.

From our conclusion on these assignments and the opinion of the Supreme Court on the question certified, it follows that our former order reversing the judgment of the court below should be set aside and that judgment affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.